UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:	Case No. 15-46671

KEITH BRADLEY KRAMER,	Chapter 7

        Debtor.	Judge Thomas J. Tucker
_____/

SAID TALEB,

        Plaintiff,	Adv. No. 15-4745

v.

KEITH BRADLEY KRAMER,

        Defendant.
_____/

**OPINION REGARDING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

**I. Introduction and background**

      The Defendant in this adversary proceeding, Keith Kramer ("Defendant" or "Kramer") filed a voluntary Chapter 11 bankruptcy petition on April 28, 2015, and the bankruptcy case was later converted to Chapter 7. Shortly before Kramer filed bankruptcy, on April 3, 2015, Plaintiff Said Taleb ("Plaintiff") obtained a judgment in state court against Kramer, based on an arbitration award. The judgment was entered by the Wayne County Circuit Court, and is referred to in this opinion as the "State Court Judgment."[1] Among other things, it granted judgment in favor of Plaintiff, and against Defendant Kramer and three limited liability companies owned by Kramer, jointly and severally, in the amount of $793,333.33.

---

    [1] A copy of the State Court Judgment, and the arbitration award on which it is based, are attached as Exhibit 6-2 to Plaintiff's summary judgment motion (Docket # 16).

In this adversary proceeding, Plaintiff seeks a determination that Kramer's debt under the State Court Judgment is nondischargeable under 11 U.S.C. § 523(a)(6), as a debt for "willful and malicious injury by the debtor."

Plaintiff filed a motion for summary judgment (Docket # 16, the "Motion"), that is based entirely on collateral estoppel. The parties briefed the Motion, and the Court held a hearing on December 9, 2015. During the hearing, and in an order filed after the hearing on December 9, 2015, the Court required the Plaintiff to file, as a supplement to the Motion, a transcript of a specific hearing held in the state court. Plaintiff timely filed that transcript, on December 22, 2015,[2] and the Court has considered the transcript in making its decision on the Motion.[3]

At the conclusion of the December 9 hearing, and in the Order filed later that day, the Court scheduled a bench opinion on the Motion.[4] Since that time, however, the Court has filed a written opinion, on December 23, 2015, deciding one of the summary judgment issues — the so-called "finality issue" — in Plaintiff's favor.[5] The Court incorporates that written opinion into this opinion, and adopts it here, by reference.

Now, the Court has decided to issue a written opinion deciding the remainder of the Motion, rather than issuing a bench opinion. The bench opinion hearing, which is currently

---

[2] Docket # 26, Ex. 1.

[3] Plaintiff also filed a 6-page brief with this transcript. That further brief was not authorized by the Court's December 9 Order, or otherwise. So the Court is disregarding that brief in making its decision on the Motion.

[4] *See* Order Regarding Further Proceedings on Plaintiff's Motion for Summary Judgment (Docket # 25).

[5] Docket # 27.

2

15-04745-tjt    Doc 31    Filed 01/18/16    Entered 01/18/16 16:15:06    Page 2 of 13

scheduled for January 20, 2016, is cancelled.

For the reasons stated in this opinion, the Court will grant Plaintiff's Motion, and enter summary judgment determining that Defendant Kramer's debt to Plaintiff is nondischargeable under 11 U.S.C. § 523(a)(6).

## II. Discussion

The Court makes the following findings and conclusions that are relevant to Plaintiff's Motion. There is no genuine dispute regarding the facts that are material to the rulings the Court makes today.

1. This Court has subject matter jurisdiction over this adversary proceeding. And this adversary proceeding is a core proceeding. These conclusions are made for the reasons stated by the Court in its December 23, 2015 opinion (Docket # 27 at 3-4), which are incorporated into this opinion by reference.

2. In ruling on Plaintiff's Motion, the Court is applying the well-established principles that govern motions for summary judgment. The Court described those principles in *McCallum v. Pixley* (*In re Pixley*), 456 B.R. 770, 774-75 (Bankr. E.D. Mich. 2011), and incorporates that discussion into this opinion now, by reference.

3. In its 2011 decision in *Pixley*, cited above ("*Pixley I*"), this Court set out the principles and authorities relevant to the application of collateral estoppel, based on a state court judgment against the bankruptcy debtor, in a dischargeability adversary proceeding. And the Court reiterated and updated that discussion in its 2014 decision in the *Pixley* case, *McCallum v. Pixley* (*In re Pixley*), 504 B.R. 852 (Bankr. E.D. Mich. 2014) ("*Pixley II*"). The Court incorporates by reference, into this opinion, and adopts, its detailed discussion of collateral estoppel in *Pixley I*

3

and *Pixley II*. This includes the Court's discussion of the preclusive effect of a Michigan state court judgment in a dischargeability action under Bankruptcy Code § 523(a), including § 523(a)(6). *See Pixley I*, 456 B.R. at 775-76, 778-79 (Parts IV-A and IV-C of the opinion); *Pixley II*, 504 B.R. at 856-58, 862-64. The collateral estoppel principles discussed in the *Pixley* cases apply fully to a Michigan state court judgment that confirms and is based on an arbitration award. *See Tweedie v. Hermoyian* (*In re Hermoyian*), 466 B.R. 348, 362 (Bankr. E.D. Mich. 2012) and cases cited therein.

    4. The elements that Plaintiff must establish to show that Defendant Kramer's judgment debt is nondischargeable under § 523(a)(6), as a debt for "willful and malicious injury by the debtor," are stated by this Court in its two *Pixley* opinions, and the Court incorporates by reference, into this opinion, and adopts, that discussion of the elements. *See Pixley I*, 456 B.R. at 785; *Pixley II*, 504 B.R. at 865-66.

    5. The Court also incorporates by reference what it stated in the bench opinion the Court issued on May 30, 2013 in the adversary proceeding *Michigan First Credit Union v. Barbara Jean Smith*, Adv. No. 12-5492. (A transcript of that bench opinion is on file in adversary proceeding no. 12-5492, at Docket # 155, and a copy of it is being filed today in this adversary proceeding, as a supplement to this opinion. That bench opinion is cited later in this opinion as "Bench Op. Tr. at __"). This includes the Court's conclusions, based largely on the Sixth Circuit decision in *Kennedy v. Mustaine*, 249 F.3d 576 (6th Cir. 2001), that when a debt has been reduced to judgment by a Michigan court and is based on defamation *per se* under Michigan law, the doctrine of collateral estoppel precludes the bankruptcy debtor from contesting the elements of nondischargeability under § 523(a)(6), and the debt is nondischargeable under that section.

*See* Bench Op. Tr. at 36-53.

      6. Defendant Kramer does not dispute these conclusions. Rather, he argues that they do not apply to the facts of this case. Kramer argues that in this case one cannot determine, from the state court record, whether or to what extent the State Court Judgment, and the arbitration award that the State Court Judgment confirmed and adopted, are based on defamation, rather than one or more of the other legal theories that Plaintiff pled and argued before the arbitrator and in the state court. Kramer correctly points out, as this Court has previously held, that:

> Under Michigan law, "[c]ollateral estoppel applies only where the basis of the prior judgment **can be ascertained clearly, definitely, and unequivocally**." *People v. Gates*, 452 N.W.2d 627, 631 (Mich. 1990)(emphasis added, citations omitted).

*Chamberlain v. Messer* (*In re Messer*), 500 B.R. 875, 882 (Bankr. E.D. Mich. 2013).

      7. It is clear and undisputed that in the state court action, and before the arbitrator, Plaintiff pled and argued a claim of defamation under Michigan law, and that Plaintiff's defamation claim was entirely for defamation *per se*. The allegedly defamatory statements by Kramer all were statements accusing Plaintiff of having committed one or more crimes. Under Michigan law, such statements give rise to a claim of defamation *per se*. *See* Bench Op. Tr. at 36-39 and authorities cited therein.

      8. In addition to his claim of defamation *per se*, however, Plaintiff pled and argued other claims, based on other legal theories, and at least some of these other claims/legal theories might not support a finding of nondischargeability under 11 U.S.C. § 523(a)(6). The other claims were:

- malicious prosecution
- abuse of process

- wrongful discharge (including breach of implied employment contract and discharge in violation of public policy)

- retaliatory discharge in violation of public policy

- intentional infliction of emotional distress[6]

9. Kramer argues that one cannot tell from the arbitrator's written decision which of Plaintiff's claims were decided in Plaintiff's favor. As a result, Kramer argues, this Court cannot determine whether or to what extent the arbitration award and resulting State Court Judgment were based on Plaintiff's defamation *per se* claim.

10. This Court disagrees, and concludes that the entire arbitration award amount, and therefore the entire State Court Judgment amount, were clearly based on defamation *per se* under Michigan law. This is clear from the wording of the arbitrator's written decision. And this conclusion is further bolstered by Kramer's own admission, through his attorney, made during a hearing in the state court.

11. The arbitrator's 5-page written decision, dated March 12, 2015, and entitled "Arbitration Awards," is in the record as an exhibit to Plaintiff's Motion (Docket # 16, Ex. 6-2, the "Arbitration Award"). The arbitrator's decision in favor of Plaintiff, awarding a total of $793,333.33 against Kramer and his three companies, jointly and severally, is clearly based on Plaintiff's defamation claim. The section of the Arbitration Award that precedes the "Damages" section of the Award, which is devoted to discussing Kramer's liability (Arbitration Award at 2-4), was by its content clearly limited to discussing and ruling on Plaintiff's defamation claim.

---

[6] *See* the following exhibits to Plaintiff's Motion at Docket # 16: Ex. 6-3 at 33-40 (Counts II through VI of Plaintiff's claims against Kramer); Ex. 6-8 at 32-35 (Plaintiff's Arbitration Statement); Ex. 6-9 at 24-29 (Plaintiff's Arbitration Closing Argument).

There the arbitrator found that after Kramer dismissed Plaintiff from his employment, Kramer falsely accused Plaintiff of check forgery and embezzlement. The arbitrator found that these false accusations of "criminal wrongdoing" against Plaintiff were intentionally done by Kramer, were "malicious in their nature," and were made by Kramer to PNC Bank, the Detroit Police Department, and the Michigan Attorney Grievance Commission.[7] (Arbitration Award at 3-4). And the arbitrator found that Kramer had not retracted his malicious "allegations of criminal activity" by Plaintiff, despite demand for retraction by Plaintiff. (*Id.* at 4).

12. Given the foregoing, it is clear that all of the damages components that made up the total award against Kramer were based on defamation.

13. This conclusion is reinforced by the content of the arbitrator's discussion in the "Damages" section of the Arbitration Award. The damages included lost income, past and future, due to Plaintiff's inability to work as an attorney, because of Kramer's defamatory accusations against Plaintiff. As set forth on pp. 4-5 of the Arbitration Award, the damage components were:

(1) $225,000 for Plaintiff's "past" loss of income (2.5 years at $90,000 per year), noting that Plaintiff had not worked for 2.5 years "because of his involvement in **defending himself against Kramer's allegations** in this litigation" (emphasis added);[8]

(2) $270,000 for Plaintiff's "loss of future earning capacity" (3 years at $90,000 per year),

---

[7] Plaintiff was and is an attorney, licensed to practice in Michigan.

[8] In his claims against Plaintiff in the state court lawsuit, Kramer continued to make the same allegations of criminal conduct against Plaintiff that he had made before filing the lawsuit, which the arbitrator found to be false and defamatory — namely, that Plaintiff embezzled money from Kramer and his businesses by means of numerous acts of check forgery. (*See, e.g.*, Ex. 6-8 to Plaintiff's Motion (Docket # 16) at 3).

7

based on the arbitrator's finding that "[i]t is estimated that it will take [Plaintiff] at least 3 years to **reestablish his reputation** and reenter his profession" (emphasis added);

(3) "exemplary damages" for "mental anguish and **loss of reputation**" of $75,000 (emphasis added);

(4) "costs" of $25,000; and

(5) "attorney fees and costs" of $198,333.33 (calculated as 1/3 of the total of the other damages).[9]

This calculation of "Damages" by the arbitrator, and in particular the references in bold above, combined with the fact that the preceding section of the Arbitration Award (discussing liability) was limited by content to defamation *per se*, clearly shows that the entire $793,333.33 Arbitration Award amount was based on defamation *per se.*

14. And Kramer admitted as much, through his attorney, during a hearing held in the state court on March 30, 2015. That was the hearing the state court held regarding a motion Kramer filed to vacate the arbitration award, and Plaintiff's competing motion to confirm the award. During that hearing, Kramer's attorney echoed Kramer's written argument, complaining that the arbitrator failed to clearly rule separately on each of Plaintiff's claims other than defamation. Kramer's attorney stated to the court that "[w]e believe [the arbitrator] only ruled on the defamation action in [Plaintiff Taleb's] favor."[10]

15. For these reasons, the Court finds and concludes that the entire Arbitration Award

---

[9] In awarding attorney fees calculated in this manner, the arbitrator obviously was adopting the reasoning in Plaintiff's Arbitration Closing Statement, that the award include "the 1/3 attorney fee that is a recoverable expense of litigation that [Plaintiff] will incur." (Docket # 16, Ex. 6-9, at 35).

[10] Docket # 26, Ex. 1, Tr. at p. 8, lines 17-18.

8

15-04745-tjt    Doc 31    Filed 01/18/16    Entered 01/18/16 16:15:06    Page 8 of 13

amount, and therefore the entire amount of the State Court Judgment (which confirmed and adopted the Arbitration Award), was based on defamation *per se* under Michigan law. The state court record establishes this, "clearly, definitely, and unequivocally." *See Chamberlain v. Messer* (*In re Messer*), 500 B.R. at 882 (quoted in ¶ 6 of this opinion).

16. As a result, Plaintiff is entitled to a summary judgment determining that Kramer's entire debt under the State Court Judgment is nondischargeable under 11 U.S.C. § 523(a)(6). The debt is a "debt . . . for willful and malicious injury by the debtor" under § 523(a)(6). Both the "wilful" and "malicious" elements under § 523(a)(6) are established. *See* discussion in ¶ 5 of this opinion; Bench Op. Tr. at 33-56 and authorities cited therein.

17. Kramer argues that the Arbitration Award, and therefore the State Court Judgment, failed to apportion damages among the four parties found liable. Rather, Kramer and each of his three companies were held liable, jointly and severally, for the entire $793,333.33 damages amount. Kramer argues that this "calls into question" whether the Arbitration Award and the State Court Judgment were based on defamation, rather than some other legal theory(ies).[11] This is because, according to Kramer, joint and several liability for torts, including defamation, was abolished several years ago in Michigan, by statute. Kramer cites Mich. Comp. Laws Ann. § 600.2956, enacted in 1995, which states:

> Except as provided in [Mich. Comp. Laws Ann. §600.]6304, in an action based on tort or another legal theory seeking damages for personal injury, property damage, or wrongful death, the liability of each defendant for damages is several only and is not joint. **However, this section does not abolish an employer's vicarious liability for an act or omission of the employer's employee.**

---

[11] *See* Defendant's Br. (Docket # 17) at 12.

Mich. Comp. Laws Ann. § 600.2956 (emphasis added).

Instead of joint and several liability, Kramer argues, liability in tort must be apportioned among several defendants in proportion to their percentage of fault. Kramer cites Mich. Comp. Laws Ann. § 600.2957, which states:

> (1) In an action based on tort or another legal theory seeking damages for personal injury, property damage, or wrongful death, **the liability of each person shall be allocated under this section by the trier of fact and**, subject to [Mich. Comp. Laws Ann. §600.] 6304, **in direct proportion to the person's percentage of fault.** In assessing percentages of fault under this subsection, the trier of fact shall consider the fault of each person, regardless of whether the person is, or could have been, named as a party to the action.
>
> (2) Upon motion of a party within 91 days after identification of a nonparty, the court shall grant leave to the moving party to file and serve an amended pleading alleging 1 or more causes of action against that nonparty. A cause of action added under this subsection is not barred by a period of limitation unless the cause of action would have been barred by a period of limitation at the time of the filing of the original action.
>
> (3) [Mich. Comp. Laws Ann. §§600.]2956 to 2960 do not eliminate or diminish a defense or immunity that currently exists, except as expressly provided in those sections. Assessments of percentages of fault for nonparties are used only to accurately determine the fault of named parties. If fault is assessed against a nonparty, a finding of fault does not subject the nonparty to liability in that action and shall not be introduced as evidence of liability in another action.

Mich. Comp. Laws Ann. § 600.2957 (emphasis added).

18. Based on these Michigan statutes, Kramer argues as follows:

> Under the applicable statutes, if the arbitrator was basing the Arbitration Award on any of the tort claims asserted, including defamation, the award would necessarily, by statute, include an allocation between the four defendants and could not be joint and

10

15-04745-tjt    Doc 31    Filed 01/18/16    Entered 01/18/16 16:15:06    Page 10 of 13

> several. The arbitrator, however, made no attempt to allocate fault
> between any of the four parties as required by M.C.L. § 600.2957;
> and found the parties jointly and severally liable to Plaintiff
> contrary to M.C.L. § 600.2956. The only conclusion (other than the
> arbitrator completely disregarded his duty to correctly apply
> Michigan law) is that the basis for the Arbitration Award could not
> have been any of the tort claims, including defamation. At a
> minimum, the arbitrator's failure to allocate fault and impose joint
> and several liability, calls into question the premise that the tort of
> defamation is the actual basis for the Arbitration Award. As such,
> the basis of the Arbitration Award and Judgment cannot be
> ascertained clearly, definitely, and unequivocally.  In accordance
> with *Messer* and controlling Michigan authority cited therein, the
> doctrine of collateral estoppel cannot be applied to the Arbitration
> Award, and Plaintiff's Motion must be denied.[12]

19. Kramer's argument is without merit, for at least two reasons.  For the first reason, let us assume for the moment that Kramer is correct about Michigan law in this context, so that any tort judgment against Kramer and his companies could not be joint and several, but rather had to be for damages apportioned among them.  That would only mean, at most, that the arbitrator and the state court committed legal error in awarding a judgment jointly and severally against Kramer and his companies.  It would *not* tend to prove that the Arbitration Award and the State Court Judgment were based on a legal theory other than defamation.  As discussed in ¶¶ 11-14 above, the wording of the written Arbitration Award makes clear that it *was* based on defamation, *and Kramer admitted to the state court that the award was based on defamation and defamation alone*.  Kramer's argument about joint and several liability does *not* tend to show that the Arbitration Award and the State Court Judgment were *not* based on defamation.  Rather, at most, it merely amounts to an argument that the State Court Judgment is *legally erroneous*.

20. Even if the State Court Judgment were erroneous, that would not be a basis for

---

[12] Defendant's Br. (Docket # 17) at 13-14.

11

avoiding the preclusive effect of the State Court Judgment under the doctrine of collateral estoppel. *See, e.g., Crawford v. Chabot*, 202 F.R.D. 223, 228-29 (W.D. Mich. 1998) (rejecting an argument that a state court judgment should not be given preclusive effect because it was erroneous).[13] Nor does Kramer argue otherwise. If the State Court Judgment is erroneous, Kramer's recourse, at most, is to appeal it to the Michigan Court of Appeals. And he has done that. If Kramer prevails on his state court appeal, he will have the benefit of that result.

21. A second reason why the Court must reject Kramer's argument about joint and several liability is that the argument overlooks the last sentence of Mich. Comp. Laws Ann. § 600.2956, quoted in bold in ¶ 17 above. That says: "[h]owever, this section does not abolish an employer's vicarious liability for an act or omission of the employer's employee." Thus, joint and several liability in tort can still apply in Michigan when an employer's liability for the tort is based on vicarious liability.

22. The state court record in this case makes clear that Kramer's three companies were held liable for Kramer's actions in defaming Plaintiff, on the basis of vicarious liability, as employers of Kramer. Kramer's own liability for defamation, on the other hand, was liability for his own actions. Thus, the only joint and several liability here was holding Kramer's three

---

[13] In *Crawford v. Chabot*, the federal district court rejected the plaintiff's argument that "even if his claim would ordinarily be barred by res judicata" due to a previous Michigan state court judgment, that previous judgment should not be given preclusive effect because the state court judgment conflicted with binding decisions of the United States Supreme Court. 202 F.R.D. at 228-29. The court rejected that argument, because it was inconsistent with principles of res judicata, and also because it was barred by the *Rooker-Feldman* doctrine. *Id.*

Both of these reasons apply as reasons to reject any argument Kramer might have made in this case (but did not make), that the State Court Judgment should not be given preclusive effect on the ground that it is *erroneous*.

companies jointly and severally liable with Kramer, for Kramer's actions, based on vicarious liability. In this situation, there is no relative "fault" to apportion among joint tortfeasors, because Kramer was the only one whose actions gave rise to liability — in effect, Kramer was 100% at "fault" among the four persons/entities held liable for defamation. Because the vicarious liability of Kramer's companies for his defamatory actions is expressly excepted from the statutory rule abolishing joint and several tort liability, the State Court Judgment is not contrary to Michigan law.

23. The state court clearly viewed the case in this way, when it rejected Kramer's argument about joint and several liability, and decided to confirm and adopt the Arbitration Award. In rejecting Kramer's argument that the Arbitration Award erred in finding joint and several liability, the state court stated the following during the March 30, 2015 hearing:

> It's clear to the Court that the arbitrator made the award against Mr. Kramer who owns the two [sic] companies, so the Court will sign a Judgment indicating it's joint and several.[14]

### III. Conclusion

For the reasons stated in this opinion, the Court will enter an order granting summary judgment for Plaintiff, and determining that Defendant Keith Kramer's entire debt to Plaintiff under the State Court Judgment is nondischargeable under 11 U.S.C. § 523(a)(6).

**Signed on January 18, 2016**  /s/ **Thomas J. Tucker**
**Thomas J. Tucker**
**United States Bankruptcy Judge**

---

[14] Docket # 26, Ex. 1, Tr. at p. 12, lines 14-17.