# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

In re:                                                    Case No. 15-46671

KEITH BRADLEY KRAMER,                                     Chapter 7

　　　　　　　　Debtor.                                   Judge Thomas J. Tucker
_____ /

SAID TALEB,

　　　　　　　　Plaintiff,                               Adv. No. 15-4745

v.

KEITH BRADLEY KRAMER,

　　　　　　　　Defendant.

_____ /

**SUPPLEMENT TO THE COURT'S WRITTEN OPINION FILED TODAY,
REGARDING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

　　　This adversary proceeding came before the Court on December 9, 2015, for a hearing on the Plaintiff's motion for summary judgment (Docket # 16, the "Motion"). Today the Court has filed a written opinion regarding the Motion. This is a supplement to that written opinion, which is referred to in the opinion.

　　　Attached is a transcript of the bench opinion that the Court issued on May 30, 2013 in the adversary proceeding *Michigan First Credit Union v. Barbara Jean Smith*, Adv. No. 12-5492. (A transcript of that bench opinion also is on file in adversary proceeding no. 12-5492, at Docket # 155).

**Signed on January 18, 2016**                **/s/ Thomas J. Tucker**　　　　　
　　　　　　　　　　　　　　　　　　　　　**Thomas J. Tucker**
　　　　　　　　　　　　　　　　　　　　　**United States Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

IN RE:  MICHIGAN FIRST      .        Docket No. 12-05492
        CREDIT UNION,        .
                             .        Detroit, Michigan
                Plaintiff,   .        May 30, 2013
                             .        2:14 p.m.
        v.                   .
                             .
        BARBARA JEAN SMITH,  .
                             .
                Defendant.   .
. . . . . . . . . . . . . . .

HEARING RE. BENCH OPINION RE. MOTIONS FOR SUMMARY JUDGMENT
        BEFORE THE HONORABLE THOMAS J. TUCKER
        UNITED STATES BANKRUPTCY COURT JUDGE

APPEARANCES:

For the Plaintiff:   Holzman Corkery, PLLC
                     By:  TAMARA A. WHITE
                     28366 Franklin Road
                     Southfield, MI  48034
                     (248) 352-4340

For the Defendant:   Thornbladh Legal Group, PLLC
                     By:  KURT THORNBLADH
                     7301 Schaefer
                     Dearborn, MI  48126
                     (313) 943-2678

                     BARBARA JEAN SMITH
                     7800 E. Jefferson, Apt. 1209
                     Detroit, MI  48214

Court Recorder:      Jamie Laskaska
                     United States Bankruptcy Court
                     211 West Fort Street
                     21st Floor
                     Detroit, MI  48226-3211
                     (313) 234-0068

Transcribed By:      Lois Garrett
                     1290 West Barnes Road
                     Leslie, MI  49251
                     (517) 676-5092

Proceedings recorded by electronic sound recording,
transcript produced by transcription service.

1        THE CLERK: Please rise. This court is now in

2 session, the Honorable Thomas J. Tucker presiding. You may

3 be seated. Court will call the matter of Michigan First

4 Credit Union versus Smith, 12-5492.

5        THE COURT: All right. Good afternoon. Let's have

6 appearances for the record, please, starting with the

7 plaintiff's side.

8        MS. WHITE: Thank you. Tammy White on behalf of

9 Michigan First Credit Union.

10        MR. THORNBLADH: Your Honor, Kurt Thornbladh on

11 behalf of Barbara Smith who is seated beside me at counsel

12 table.

13        THE COURT: All right. Good afternoon. Have a

14 seat. All right. As you know, the purpose of this hearing

15 today is primarily for the Court to give an oral bench

16 opinion explaining and announcing its ruling on the pending

17 motions for summary judgment that have been filed in this

18 adversary proceeding by the parties, and I'll do that now.

19        MS. SMITH: Your Honor, excuse me. What about my

20 motion to dismiss that I had filed?

21        THE COURT: Sit down. Sit down, and don't interrupt

22 me. I'm going to go through -- as I said yesterday, I'm

23 going to go through. I'm going to give a bench opinion on

24 these motions for summary judgment that we heard at great

25 length yesterday. Don't interrupt me again, please, Ms.

1  Smith.

2          First, a bit of background regarding this case.  The

3  debtor, who is the defendant in this adversary proceeding,

4  Barbara Smith, filed a voluntary Chapter 7 bankruptcy case in

5  this court on May 10, 2012, Case Number 12-51813.  The

6  defendant, Ms. Smith, received a Chapter 7 discharge by a

7  discharge order that was entered in her bankruptcy case on

8  August 21, 2012.  This adversary proceeding was filed by the

9  plaintiff, Michigan First Credit Union, on August 15, 2012,

10  and in the adversary proceeding complaint filed on that day

11  by the plaintiff, which I'll refer to sometimes here in this

12  bench opinion as the credit union or the plaintiff, the

13  credit union alleged two counts.  The first count alleged

14  that the -- a money judgment entered by the state court,

15  which I'll describe more in a minute, on September 26, 2011,

16  I believe -- and, again, I'll describe it more -- in more

17  detail in a minute -- that that money judgment is a debt that

18  is nondischargeable under Section 523(a)(6) of the Bankruptcy

19  Code because it is a debt for a willful and malicious injury

20  within the meaning of that section.

21          Count II of the complaint concerns a permanent

22  injunction that the state court entered in the same judgment

23  in which it entered a money judgment against the defendant in

24  favor of the credit union, which prohibited the defendant

25  from engaging in certain conduct, and the Count II seeks and

4

1   the complaint seeks a determination by this Court that that

2   permanent injunction is not a debt that is dischargeable in

3   the debtor's bankruptcy case.

4        Now, the state court judgment at issue, for the

5   record, was dated September 26, 2011.  A copy of that

6   judgment, which is entitled "Final Judgment," is in various

7   places in the record in this adversary proceeding.  One place

8   it appears is as one of the exhibits to the plaintiff credit

9   union's motion for summary judgment at Docket Number 85.

10        The Bankruptcy Court, this court, has subject matter

11  jurisdiction over this adversary proceeding under 28 U.S.

12  Code, Section 1334(b), 157(a), and 157(b)(1), and the local

13  Rule 83.50(a) of the local rules of the United States

14  District Court for this district, which relate to a referral

15  of bankruptcy matters to the Bankruptcy Court by the District

16  Court.  This adversary proceeding is a core proceeding in all

17  respects with respect to both counts of the adversary

18  proceeding complaint under 28 U.S. Code, Section

19  157(b)(2)(i).  This adversary proceeding also is a core

20  proceeding because it falls within the definition of a

21  proceeding, quote, "arising under Title 11," unquote, and of

22  a proceeding, quote, "arising in," unquote, a case under

23  Title 11 of the U.S. Code within the meaning of 28 U.S. Code,

24  Section 1334(b).  Matters falling within either of these

25  categories in Section 1334(b) are deemed to be core

1   proceedings as the Sixth Circuit has held in cases which I

2   cite and with approval and also cite this proposition in a

3   prior published opinion of mine that I'll just rely on here

4   and incorporate by reference, and that's the case of <u>Allard</u>,

5   A-l-l-a-r-d, versus <u>Coenen</u>, C-o-e-n-e-n, <u>In re. Trans-</u>

6   <u>Industries, Inc.</u>, 419 Bankruptcy Reporter 21 at page 27, a

7   decision from 2009.

8           This is a proceeding, quote, "arising under Title

9   11," unquote, because it is created or determined by a

10  statutory provision of Title 11, including Bankruptcy Code

11  Sections 523(a)(6) and also Bankruptcy Code Sections 101, sub

12  (5), 101, sub (12), and 727(b) of the Bankruptcy Code.  And

13  this also is a proceeding that is, quote, "arising in,"

14  unquote, a case under Title 11 because it is a proceeding

15  that by its very nature could arise only in bankruptcy cases.

16  Now, such proceedings are core proceedings, as I held in the

17  <u>Allard</u> versus <u>Coenen</u> case citing Sixth Circuit cases, again,

18  419 Bankruptcy Reporter at page 27.

19          The parties are -- the counsel for the parties are,

20  of course, well familiar with the rules and standards that

21  govern a court's decision -- a federal court's decision on

22  the motion or motions for summary judgment under Federal

23  Civil Rule 56.  I won't repeat all of those verbatim here.

24  What I will do, though, is I will incorporate by reference

25  what I have said about that subject in a prior published

opinion, and that's a published opinion that I will cite for
other reasons, too, today, and it's the opinion in the case
of McCallum versus Pixley, P-i-x-l-e-y for Pixley, In re.
Pixley, 456 Bankruptcy Reporter 770, a decision of this Court
from 2011.  At pages 774 to 775 of that opinion, I talk about
the standards governing motions for summary judgment, and I'm
incorporating that discussion here by reference and will say
for the record I have applied and am applying those
principles and standards in reaching my decision and making
my ruling on the summary judgment motions today.

Both sides, the plaintiff and the defendant, have
filed motions for summary judgment, of course, and I'm going
to talk about both of them in this bench opinion.  As I
mentioned, as I alluded to in yesterday's hearing, in many
respects, the motions are essentially flip sides of the coin,
in effect, and so I'll talk about them together in this bench
opinion.

I want to first talk about the permanent injunction
that was entered in the state court action against the
defendant, Barbara Smith, and her daughter, the other
defendant in that case, Sarah Troupe, T-r-o-u-p-e.  The final
judgment that I'm talking about, as I said, was entered on
September 26, 2011.  It appears, among other places, at
Docket Number 85 as one of the exhibits.  It was entered by
the Circuit Court for Oakland County, Michigan, in the case

1    of Michigan First Credit Union versus Barbara J. Smith and

2    Sarah Troupe, Case Number 07-82217-CZ, Judge Michael Warren.

3          In that judgment, the permanent injunction at issue

4    is in paragraph 5 on the second page of that judgment.  It

5    says the following, quote, "Smith and Troupe are hereby

6    permanently enjoined from stating publicly and/or from

7    distributing or displaying to the public any material

8    stating, comma, that Michigan First stole money from either

9    or both of them in connection with any of the transactions,

10   loans, accounts, or checks referred to in the verified

11   complaint or any of its exhibits," unquote.  The money

12   judgment portions or aspects of the judgment are found in the

13   earlier paragraphs of that judgment, paragraphs 2 through 4,

14   and I'll talk about the money judgment part of that in more

15   detail in a little bit focusing on the permanent injunction

16   aspect of the final judgment first and what the parties argue

17   about in their motions for summary judgment on that.

18         As I understand it, the plaintiff credit union's

19   position, as expressed in its summary judgment motion and in

20   the oral argument yesterday, was and is that the permanent

21   injunction is a claim and a debt within the meaning of the

22   Bankruptcy Code's definition of those terms and use of those

23   terms, and it is a nondischargeable debt under Section

24   523(a)(6) of the Bankruptcy Code for basically the same

25   reason or reasons that the money judgment aspect of the state

1   court judgment is nondischargeable under that section and

2   seeks a -- the credit union seeks a determination by the

3   court to this effect.

4          The defendant's position, as I understand it, as

5   expressed in the defendant's summary judgment papers and in

6   the -- discussed in the hearing yesterday, is twofold and

7   expressed in the alternative.  First, the first argument by

8   the defendant in its first position is that the permanent

9   injunction is not a claim or a debt as those terms are used

10  and defined in the Bankruptcy Code, and, as a result, Section

11  523(a)(6) and its exception to discharge does not apply to

12  the permanent injunction, and, as I understand it, defendant

13  is arguing from that that Count II of the complaint, which

14  concerns the dischargeability of the permanent injunction of

15  the debtor's bankruptcy case, should be dismissed and

16  plaintiff's summary judgment motion should be denied and

17  defendant's should be granted with respect to Count II.  The

18  defendant appears to argue, among other things possibly, but

19  including the argument -- an argument that because the

20  permanent injunction is not a claim or a debt within the

21  meaning of the Bankruptcy Code and 523(a)(6) does not apply

22  to it, this Court, the Bankruptcy Court, does not have

23  jurisdiction or authority to enter any sort of judgment or

24  relief in favor of the credit union in determining that the

25  permanent injunction is not dischargeable.

1      The defendant's second argument, which is made in

2  the alternative to the first one, as I understand it,

3  regarding the permanent injunction is that if the Court

4  determines that the permanent injunction is a claim or a

5  debt, it is a debt that is not nondischargeable under Section

6  523(a)(6) for a variety of reasons the defendant argues.  In

7  addressing this aspect or this part of the dispute between

8  the parties, I need to begin, as I think the parties did in

9  their arguments, by noting the following.  The Bankruptcy

10  Code defines the word "claim" in Section 101, sub (5), of the

11  Bankruptcy Code to mean the following, quote, "The term

12  'claim' means (A) right to payment, whether or not such right

13  is reduced to judgment, liquidated, unliquidated, fixed,

14  contingent, matured, unmatured, disputed, undisputed, legal,

15  equitable, secured, or unsecured, or (B) right to an

16  equitable remedy for breach of performance if such breach

17  gives rise to a right to payment, whether or not such right

18  to an equitable remedy is reduced to judgment, fixed,

19  contingent, matured, unmatured, disputed, undisputed,

20  secured, or unsecured," unquote, rather long definition, but

21  case law boils that down a bit, as I'll discuss in a minute.

22      Now, the term "debt," in turn, is defined in Section

23  101, sub (12), of the Bankruptcy Code, which says that,

24  quote, "The term 'debt' means liability on a claim," unquote,

25  so obviously if something is not a claim, then it cannot be

1    the basis for a debt since the definition of "debt"

2    includes -- incorporates in a sense the definition of

3    "claim."

4         Two other provisions of the Bankruptcy Code are

5    relevant in this discussion.  The first of those is Section

6    727(b) of the Bankruptcy Code, 11 U.S.C., Section 727(b).

7    I'll read excerpts from that section.  It says in pertinent

8    part that, quote, "Except as provided in Section 523 of this

9    title, a discharge under subsection (a) of this section

10   discharges the debtor from all debts that arose before the

11   date of the order for relief under this chapter, and any

12   liability on a claim that is determined under section 502 of

13   this title as if such claim had arisen before the

14   commencement of the case," unquote.

15        The essence of -- essentially what this section says

16   and means is that when a debtor obtains a discharge in a

17   Chapter 7 bankruptcy case, which the defendant, Ms. Smith has

18   done here in her bankruptcy case, that discharge discharges

19   only certain debts and claims and nothing else, so that if

20   the permanent injunction here is not a debt or a claim, as

21   those words are used in Section 727(b) and as defined in

22   Section 101, then the debtor's discharge does not discharge

23   or have any effect on the permanent injunction.

24        The next section and the final section of the Code,

25   of course, that I need to mention here in this discussion is

1    Section 523(a)(6) itself.  That section says that -- in

2    pertinent part it says that a discharge under Section 727

3    does not discharge an individual debtor from any debt "for

4    willful and malicious injury by the debtor to another entity

5    or to the property of another entity," unquote, so Section

6    523(a)(6), as with other subprovisions of Section 523(a),

7    provides an exception to discharge in a Chapter 7 case with

8    respect to certain debts.  Of course, in using the word

9    "debt," it only -- Section 523(a)(6) and the other provisions

10   of Section 523(a) only apply to debts that are -- as that

11   term is defined in Section 101, which, in turn, is dependent

12   upon the definition of "claim," as I've read earlier, and so

13   the first question with respect to this dispute over the

14   permanent injunction in this case is whether the permanent

15   injunction here is a claim and a debt as those terms are

16   defined in the Bankruptcy Code.  The credit union cites the

17   U.S. Supreme Court's decision in Ohio versus Kovacs in

18   support of its position and argument that the permanent

19   injunction in this instance is a debt and a claim.  Ohio

20   versus Kovacs is reported at 469 U.S. Reporter 274, 105

21   Supreme Court Reporter 705, a decision of the Supreme Court

22   of the United States from 1985.

23        In the Kovacs case, the Supreme Court held that the

24   obligation of a bankruptcy debtor to comply with a state

25   court injunction requiring it to clean up a hazardous waste

1   disposal site was a debt or a liability on a claim -- in

2   other words, a debt, as that term is used in the Bankruptcy

3   Code -- subject to discharge under the Bankruptcy Code.  The

4   <u>Kovacs</u> case, however, is quite different from this case.  The

5   injunction in that case is quite different from the

6   injunction in this case.  The injunction in the <u>Kovacs</u> case

7   was a mandatory injunction that affirmatively required the

8   bankruptcy debtor to clean up a hazardous waste site.  That

9   is, it did not merely prohibit the debtor from doing

10  something.  It affirmatively required the debtor to engage in

11  certain activity, namely cleaning up a waste disposal site in

12  Ohio.  That's what I mean by mandatory injunction.  Rather

13  than being prohibitory in nature, it was mandatory, and it

14  required affirmative action by the debtor.  And as the -- all

15  the parties in the <u>Kovacs</u> case apparently and the lower

16  courts, including the Court of Appeals and the Supreme Court,

17  all agreed and concluded, the injunction in the <u>Kovacs</u> case

18  was such that the debtor -- the bankruptcy debtor could only

19  comply with it by spending money; that is, the debtor could

20  not himself personally clean up this waste site.  He had to

21  spend money to do it, and that was the only way to do it.

22  That's noted at 105 Supreme Court Reporter at pages 709 and

23  710.  In fact, at page 710 the Supreme Court says, quote, "We

24  cannot fault the Court of Appeals for concluding that the

25  cleanup order had been converted into an obligation to pay

1  money, an obligation that was dischargeable in bankruptcy,"

2  unquote.  On page -- at 105 Supreme Court Reporter at page

3  711, in fact, the Supreme Court noted that its holding was

4  limited to that kind of situation.  As the Supreme Court said

5  at page 711, quote, "we do not hold that the injunction

6  against bringing further toxic wastes on the premises or

7  against any conduct that will contribute to the pollution of

8  the site or the State's waters is dischargeable in

9  bankruptcy; we here address, as did the Court of Appeals,

10 only the affirmative duty to clean up the site and the duty

11 to pay money to that end," unquote, so the Supreme Court's

12 reasoning and holding in Kovacs was limited to that

13 situation.

14      This case, by contrast, is unlike Kovacs.  In this

15 case the injunction at issue is only a prohibitory

16 injunction, not a mandatory one.  It does not require any

17 affirmative conduct on the part of the defendant, and it is

18 certainly an injunction which the defendant can fully comply

19 with without spending any money.  It is simply an injunction

20 prohibiting the defendant from stating publicly, distributing

21 or displaying to the public certain statements or materials.

22 That's all it does, so it's quite unlike the injunction in

23 the Kovacs case.

24      The injunction in this case is, rather, much more

25 like the type of injunction that was involved in a Sixth

1    Circuit case that was decided after the <u>Kovacs</u> case, the case

2    of <u>Kennedy</u> versus <u>Medicap Pharmacies, Inc.</u>.  That's reported

3    at 267 Federal Reporter 3d 493, a decision of the U.S. Court

4    of Appeals for the Sixth Circuit from 2001.  In the <u>Medicap</u>

5    case, the injunction there prohibited a bankruptcy debtor --

6    it had been entered before bankruptcy, but it prohibited the

7    debtor from violating a covenant not to compete that was

8    contained in a franchise agreement.  After the debtor filed

9    bankruptcy, the dispute arose about this injunction and

10   whether it was a claim or debt.  The Sixth Circuit discussed

11   at length the Supreme Court's decision in the <u>Kovacs</u> case,

12   <u>Ohio</u> versus <u>Kovacs</u>, and held that this injunction was not a

13   claim or a debt within -- as those terms are used in the

14   Bankruptcy Code.  The Sixth Circuit said, for example, at 267

15   Federal Reporter 3d at page 497, quote, "The right to

16   equitable relief constitutes a claim only if it is an

17   alternative to a right to payment or if compliance with the

18   equitable order will itself require the payment of money."

19   The Court went on to say, quote, "In this case" -- at pages

20   497 to 498, "In this case, compliance with an injunction

21   would not require the expenditure of money.  The debtors

22   would simply be required to cease operating the pharmacy in

23   violation of the franchise agreement.  Looking at the

24   substance of the equitable relief sought, it is clear that

25   Medicap" -- that's the creditor -- "was not seeking the

1  payment of money.  Medicap's right to equitable relief does

2  not, therefore, equate to being a claim," unquote.

3       The Sixth Circuit then went on to talk about why it

4  concluded that the injunction in the Medicap case before it

5  also was not an alternative to a right to payment.  The Court

6  said at page 498 of its opinion, quote, "Nor is the requested

7  injunction an alternative to the right of payment."  "An

8  injunction is designed to avoid irreparable injury and may

9  issue only when the party seeking it has no adequate remedy

10  at law."  "It can only" -- the plaintiff "can only obtain

11  equitable relief if money damages for future injuries are

12  inadequate," unquote.  Now, this -- these concepts about

13  injunction -- injunctive relief were based on Iowa law in

14  that case, and for those reasons the Sixth Circuit held that

15  the injunction in that case was not an alternative to the

16  right of payment and could not be deemed a claim or debt

17  based on that alterative ground.

18       The same concepts regarding an injunction are true

19  under Michigan law as under the Iowa law that was cited in

20  the -- by the Sixth Circuit in Medicap, and that is that the

21  injunction in this case was issued under Michigan law because

22  the state court found in its findings of fact and conclusions

23  of law that it was necessary to avoid irreparable harm to the

24  plaintiff credit union so that damages -- the prospect of

25  damages for future violations or future conduct that amounted

1    to the same kind of defamation for which damages were then

2    being awarded would not be adequate.  And, as I've already

3    noted, of course, the injunction in -- that's involved in our

4    case, this case, is one that the defendant, Ms. Smith's, full

5    compliance with would not require her to spend any money.

6    So, in my view, the -- I conclude that the injunction -- the

7    permanent injunction involved in this case against the

8    defendant, Ms. Smith, is not like the injunction in Kovacs

9    and is functionally the equivalent of the type of injunction

10   involved in the Medicap case, and based on the reasoning and

11   holding of the Sixth Circuit in the Medicap case, I must

12   conclude that this injunction in our case is not a claim or a

13   debt as those terms are defined and used in the Bankruptcy

14   Code, including the Bankruptcy Code provisions that I've

15   already cited and quoted from.

16        The result of this conclusion is -- as defense

17   counsel acknowledged during yesterday's hearing on the

18   summary judgment motions, it is that the permanent injunction

19   in this case issued by the state court is not dischargeable

20   or subject to any discharge in the defendant debtor, Ms.

21   Smith's, Chapter 7 bankruptcy case or -- and is not subject

22   to her discharge that she received in that case.  The

23   permanent injunction aspect of this judgment survives the

24   debtor's discharge simply because there is nothing in the

25   Bankruptcy Code that says that that obligation that that

injunction imposes on the debtor-defendant, Ms. Smith, is
discharged or affected in any way by the Chapter 7 bankruptcy
discharge.

Now, that is a different reason than the plaintiff
has argued in the plaintiff's summary judgment motion for
coming to essentially the same conclusion.  It is a reason
why the discharge -- why the permanent injunction aspect of
the state court judgment is not dischargeable, so the
Court -- while the Court does not agree with the reasons --
the reasoning of the plaintiff urged in their summary
judgment motion for granting summary judgment on Count II,
the Court does find and conclude for the reasons that I've
stated that the plaintiff is entitled to summary judgment on
Count II to the extent of the Court determining that the
permanent injunction in the state court's September 26, 2011,
final judgment is not discharged or dischargeable in debtor's
bankruptcy case.  What that means is that the injunction --
permanent injunction continues in effect under the state
court final judgment and will do so even if the Court were to
determine that the money judgment aspect of that judgment is
dischargeable and discharged in the debtor's bankruptcy case.
And so the debtor will continue -- debtor-defendant will
continue to be bound by the permanent injunction in that
state court final judgment unless and until, of course, the
defendant is able for some reason and on some basis to

1   persuade the state court or a court in the state court's
2   appellate system to modify or vacate that injunction, which
3   certainly is not an effort that is in any way going to be
4   foreclosed by anything the Court rules on in this -- in
5   ruling on the summary judgment motions in this adversary
6   proceeding.

7           I do -- to the extent the defendant has argued that
8   if the Court determines that the permanent injunction is not
9   a claim or a debt, as I have done, that the Court has no
10  authority or jurisdiction to enter any sort of relief for the
11  plaintiff, I disagree with that.  In my view, the Court does
12  have subject matter jurisdiction, and, in fact, it is a core
13  proceeding for the Court to determine the dischargeability of
14  the permanent injunction.  Even though implicit in my
15  reasoning is that Section 523(a) does not apply, the Court
16  bases its decision on Section 105(a) of the Bankruptcy Code
17  and also the other provisions of the Code that define the
18  terms "claim" and "debt" and which determine under Section
19  727(b) what is discharged and what is not, namely only claims
20  and debts.  And so the Court will grant summary judgment for
21  the credit union for the relief that I have -- and give the
22  relief that I have indicated with respect to the permanent
23  injunction and deny -- correspondingly deny the summary
24  judgment motion of the defendant to the extent the defendant
25  seeks summary judgment on Count II of the adversary

1   proceeding complaint.

2          That leaves Count I, which deals with the money

3   judgment against the debtor-defendant, of course, which I'll

4   talk about next.  The gist of the plaintiff's summary

5   judgment motion with respect to the money judgment aspect of

6   the state court's September 26, 2011, final judgment is

7   collateral estoppel; that is, plaintiff argues that the

8   defendant is precluded from contesting that the debt -- the

9   money debt under that judgment is not dischargeable under

10  Section 523(a)(6) under the doctrine of collateral estoppel.

11         The parties have briefed the concept of collateral

12  estoppel in their motion papers, of course, and are familiar

13  with the basic concepts concerning collateral estoppel, so I

14  won't dwell on those at great length in this bench opinion.

15  I will, however -- I am, however, incorporating by reference

16  into this bench opinion what I have said about collateral

17  estoppel and related concepts in my opinion in the <u>Pixley</u>

18  case, <u>McCallum</u> versus <u>Pixley</u>, specifically 456 Bankruptcy

19  Reporter at pages 775 to 76 and in later pages when I am

20  applying the collateral estoppel concepts in that particular

21  case.  And one thing I did want to state explicitly, however,

22  in this bench opinion, as I stated on page 776 of the <u>Pixley</u>

23  opinion, is the elements under Michigan law which this Court

24  must follow in determining whether or not collateral estoppel

25  does apply and does preclude litigation of any issues by the

1    defendant, as the plaintiff argues.  Those elements -- for

2    collateral estoppel to apply, the following elements must be

3    met.  Number one, there is identity of parties across the

4    proceedings; two, there was a valid, final judgment in the

5    first proceeding; three, the same issue was actually

6    litigated and necessarily determined in the first proceeding;

7    and, four, the party against whom the doctrine is asserted

8    had a full and fair opportunity to litigate the issue in the

9    earlier proceeding.  And I'm omitting citations for this

10   proposition of what these requirements are.

11           The first issue that I want to address -- discuss

12   having to do with collateral estoppel and the plaintiff's

13   arguments and the defendant's arguments regarding summary

14   judgment on Count I of the complaint, the money judgment

15   aspect, is this argument by -- that the defendant has made in

16   her summary judgment papers and oral argument essentially

17   arguing that the final judgment entered by the state court on

18   September 26, 2011, at issue was one that was entered after

19   the defendant did not receive adequate notice of the

20   September 26, 2011, trial date in that state court case, and

21   because of that, the defendant says she did not appear at

22   trial, and because she did not appear, she was -- suffered a

23   default judgment; that is, the state court went on with a

24   trial on damages without the -- on that day without the

25   defendant being there and being heard from there at that time

1   and that day and made its findings of fact and conclusions of

2   law on the basis then of a default judgment concept.  The

3   defendant's -- who I'll refer to sometimes as the defendant's

4   notice argument or notice issue, is essentially that -- as I

5   interpret it, is essentially an argument of one of two or

6   three things and perhaps all of the -- all the following

7   things:  one, that because of the lack of notice that the

8   defendant argues, the judgment of the state court is void and

9   subject to collateral attack in this case because it was

10  entered after a violation of the debtor-defendant, Ms.

11  Smith's, due process rights, her right to notice and an

12  opportunity to defend under the due process clause of the

13  14th Amendment of the U.S. Constitution.  It also appears to

14  be an argument that -- quite apart from any constitutional

15  due process concept, that the lack of notice or the notice

16  problem the defendant argues means that at least two of the

17  elements under Michigan law for application of collateral

18  estoppel are not met here, and those would be that there was

19  a valid, final judgment in the first proceeding; that is, in

20  this September 26, 2011, judgment.  It was not valid -- it

21  was final, but it wasn't valid because of the notice problem,

22  and also that element four for collateral estoppel under

23  Michigan law is missing, that the debtor-defendant, Ms.

24  Smith, did not have a full and fair opportunity to litigate

25  the issues in the earlier case before the final judgment was

1  entered because she did not receive adequate notice of the
2  trial and, therefore, didn't show up for trial and suffered a
3  default judgment.
4          The evidence that the defendant, Ms. Smith, presents
5  in the face of the plaintiff's summary judgment motion and in
6  her -- as part of her own summary judgment motion is in --
7  regarding the notice issue is in paragraphs 21 and 22 of Ms.
8  Smith's affidavit, which was filed in more than one place,
9  but, among other places, it was filed at Docket Number 99 of
10  the Court's docket, and -- as an attachment, and it was also
11  filed as an attachment at Docket Number 87, same affidavit,
12  same date.  87 had the exhibits referred to in Ms. Smith's
13  affidavit attached behind that affidavit.  Docket 99 may not
14  have, but, in any case, I did review not only the affidavit
15  but also the exhibits.  That's the only evidence regarding
16  this notice issue.  It is really basically 21 and 22 of Ms.
17  Smith's affidavit and really boils down to paragraph 21 in
18  terms of substantive evidence regarding this issue.  And what
19  it says is the following.  Ms. Smith says the following,
20  quote, "I did not appear for the court hearing on September
21  26, 2011, because I did not receive notice.  The docket of
22  the electronic notification system does not state I received
23  the court hearing date or the judgment as evidenced by
24  Exhibit F.  I explain as follows, colon:  (A) When I
25  originally signed up for electronic filing, I used my

1  daughter's e-mail address, comma, jtroupe.7soul@yahoo.com;

2  (B) the case subsequently went up to the Court of Appeals

3  where I changed my e-mail address to

4  bassettbarbara@ymail.com; (C) the Oakland County clerk did

5  not change my noticing address to bassettbarbara@ymail.com,

6  until September 4, 2012," unquote.

7          Exhibit F that's referred to in this paragraph 21 of

8  the -- of Ms. Smith's affidavit is a single page from --

9  which appears to be from the Oakland County Circuit Court and

10  does appear to relate to the case number 07-82217-CZ in which

11  the final judgment at issue in this case was entered.  It

12  indicates that the -- that this e-mail address of Ms. Smith's

13  daughter, her co-defendant, Ms. Troupe, that she says in her

14  affidavit she used originally when she signed up for

15  electronic filing in the case was the e-mail address used

16  beginning at least as early as February 5, 2010, for notices

17  issued by the Court in that case.  The Exhibit F also appears

18  to indicate that beginning on September 4, 2012, Ms. Smith

19  was using the later e-mail address that the -- the

20  bassettbarbara@ymail.com e-mail address.  Now, of course,

21  September 4, 2012, was well after the September 26, 2011,

22  trial and trial date and the final judgment was entered.

23          That's the sum total of the evidence presented in

24  the record regarding this notice argument by the defendant in

25  the summary judgment -- in connection with the summary

1    judgment motions.  There are several problems with the

2    defendant, Ms. Smith's, notice argument, however.  First,

3    there is no evidence presented that the defendant, Ms. Smith,

4    has ever sought relief from the state court final judgment of

5    September 26, 2011, or the court's findings of fact and

6    conclusions of law which were entered at the same time based

7    on this particular no notice argument, and there -- for that

8    matter, there's no evidence that the defendant, Ms. Smith,

9    still could not seek relief in the state court system from

10   the judgment on that basis, but there is no evidence that she

11   has ever done so or tried to do so.

12          The second problem with the defendant's argument is

13   that the defendant's evidence -- that is, paragraph 21 of her

14   affidavit and Exhibit F -- do not support or establish any

15   violation of defendant's constitutional right to due process

16   under the 14th Amendment to the U.S. Constitution.  The due

17   process clause and rights under that provision of the U.S.

18   Constitution have been interpreted by the U.S. Supreme Court

19   as requiring the following as the Supreme Court -- U.S.

20   Supreme Court said in the case of Mullane versus Central

21   Hanover Bank & Trust Company way back in 1950, 339 U.S. 306,

22   70 Supreme Court Reporter at 652, at page 657 of 76 Supreme

23   Court Reporter, quote, "An elementary and fundamental

24   requirement of due process in any proceeding which is to be

25   accorded finality is notice reasonably calculated, under all

1   the circumstances, to apprise interested parties of the

2   pendency of the action and afford them an opportunity to

3   present their objections," unquote.  Later, the U.S. Supreme

4   Court reiterated that concept in the case of Jones versus

5   Flowers in 2006.  That case is at 547 U.S. 220, 126 Supreme

6   Court Reporter 1708 at pages 1713 to 1714 of the 126 Supreme

7   Court Reporter.  The Supreme Court said this, quote, "Due

8   process does not require that a property owner receive actual

9   notice before the government may take his property.  Rather,

10  we have stated that due process requires the government to

11  provide 'notice reasonably calculated, under all the

12  circumstances, to apprise interested parties of the pendency

13  of the action and afford them an opportunity to present their

14  objections,'" unquote.

15          The evidence presented here does not indicate that

16  the defendant, Ms. Smith, ever attempted to change her e-mail

17  notification address before September 4, 2012, in the Oakland

18  County Circuit Court or the Oakland County Circuit Court

19  clerk's office for receiving notice in that case in which the

20  final judgment was entered nor is there any evidence

21  presented that the Circuit Court did not give electronic

22  notice through e-mail notification of the September 26, 2011,

23  trial date to the notice that the defendant, Ms. Smith,

24  established and gave to that court and the clerk of that

25  court originally in that case for her to receive e-mail

1   notifications that address -- e-mail address which she says

2   was her daughter's e-mail address.  There is no evidence to

3   contradict what appears to be the case, which is that the

4   defendant -- it was the defendant who chose to use her

5   daughter's e-mail address, as her affidavit indicates, for e-

6   mail notifications from the Court originally in the Oakland

7   County Circuit Court.  There's no evidence she ever made an

8   effort in the Circuit Court or the Circuit Court clerk's

9   office as opposed to the Court of Appeals to change that e-

10  mail address.  There is no evidence, therefore, showing that

11  there was any sort of federal due process right violation

12  here with respect to the notice given to the defendant of the

13  trial date in the state court case.  There is no basis for

14  the Court to conclude, therefore, that the state court's

15  final judgment of September 26, 2011, is void or otherwise

16  subject to collateral attack because of a due process

17  violation.  Rather, the evidence is fully consistent with the

18  proposition that the defendant was given notice which was

19  reasonably calculated under all the circumstances to apprise

20  her of the trial date and of other important actions and

21  matters filed in the case, the Oakland County Circuit Court

22  case.

23          A third problem with the defendant's argument -- no

24  notice argument here is that it is undermined and --

25  undermined in other ways by the findings of fact and

1   conclusions of law that the state court, the Oakland County

2   Circuit Court, made on September 26, 2011, before it entered

3   and in connection with entering the final judgment at issue.

4   The findings of fact and conclusions of law are in the record

5   in various places.  One place they appear is as an exhibit at

6   Docket Number 85.  Again, they're dated September 26, 2011.

7   On pages 2 and 3 of that -- of those findings of fact and

8   conclusions of law the state court states that it was

9   entering a default against the defendants -- that is, Ms.

10  Smith and her daughter -- first because -- for their failing

11  to appear at trial on September 26, 2011, but, in addition

12  and for an additional reason, because they -- the defendants,

13  including Ms. Smith, failed to comply with the provisions of

14  that Court's scheduling order and amended scheduling order

15  that had been entered several months before the trial date,

16  which required -- among other things, required that -- the

17  defendants to file a concise theory of the case no later than

18  one week before the trial date and to file a trial brief no

19  later than one week before the trial brief (sic).  As

20  explained in detail on pages 2 to 3 and in Footnote 2 in the

21  findings of fact, the state court entered a default judgment

22  against the defendant for that reason -- independent reason

23  in addition because of her failure to appear at trial.  The

24  defendant's summary judgment evidence, including her

25  affidavit, says nothing about why the state court's

1  defaulting her was not entirely permissible within the law

2  and appropriate and not a violation of any sort of notice

3  problem, notice issues for that second independent reason of

4  failing to file the items one week before trial as required

5  by the scheduling order.

6          In any case, in addition to all that, on page 2 of

7  the findings of fact and conclusions of law, the state court

8  says -- makes findings that clearly indicate that the

9  defendant, Ms. Smith, did have actual knowledge of and a

10 reminder recently before the September 26, 2011, date of that

11 trial date and of the requirement that these items be filed

12 one week before the trial date of September 26, 2011.  The

13 Court stated the following, colon -- or quote, "Accordingly,

14 pursuant to an amended scheduling order dated June 24, 2011,

15 and a second amended scheduling order dated July 20, 2011,

16 one, a concise theory of the case was to be filed no later

17 than one week ago; two, a trial brief was to be filed no

18 later than one week ago; and, three, this case was set for

19 trial on today's date, Monday, September 26, 2011, at 8:30

20 a.m.  The defendants failed to file a concise theory of the

21 case or a trial brief, and they both failed to appear for

22 trial.  This occurred despite the fact that the amended

23 scheduling order was in effect for months and despite the

24 fact that just last week during motion call on Wednesday,

25 September 21, 2011, while on the record for a related case,

1   Case Number 2011-11927-CK, the plaintiff's counsel kindly

2   mentioned that this trial was set for today's date and that

3   the defendants had failed to file a brief or concise theory

4   of the case," unquote.  Those findings of the -- by the state

5   court on page 2 of its findings of fact and conclusions of

6   law completely undermine, in my view, any sort of argument by

7   the defendant that she did not have actual knowledge of the

8   trial date well in advance of the trial date and that she did

9   not -- and that her being defaulted was as a result of any

10  sort of unfair lack of notice or knowledge on her part of

11  what was required of her in the state court case, and there

12  is no evidence presented in the defendant, Ms. Smith's,

13  affidavit, paragraph 21, or anywhere else in connection with

14  the summary judgment motion that contradict any of those

15  findings of the state court that I just read from from page

16  2.

17          The defendant, in support of her no notice argument,

18  has cited a couple of cases, one of which I want to mention

19  briefly, and that is the Michigan Supreme Court's decision in

20  the case of Hackley versus Hackley, 395 N.W. Reporter 2d 906,

21  a Michigan Supreme Court decision from 1986 which talked

22  about collateral estoppel and the preclusive effect of final

23  judgments, and in that context the Michigan Supreme Court

24  held at page 910 of its opinion -- that is, 395 N.W. 2d at

25  page 910 -- that an exception to applying of the preclusive

1   effect under collateral estoppel of the final judgment is

2   where, quote, "there is a clear and convincing need for a new

3   determination of the issue because the party sought to be

4   precluded, as a result of the conduct of his adversary or

5   other special circumstances, did not have an adequate

6   opportunity or incentive to obtain a full and final -- a full

7   and fair adjudication in the initial action," unquote.  The

8   Court then went on to say -- and they quoted <u>Restatement</u>

9   <u>Judgments 2d</u> there, Section 28, sub (5), sub (c), with

10  approval in the quotation I just read.  The Michigan Supreme

11  Court then went on to say, quote, "According to the

12  commentary, this section should be applied only where there

13  exists a compelling showing of unfairness, and it should not

14  be applied simply on the basis that the first determination

15  was patently erroneous," unquote.

16          Based on what I have already said, it's clear to me

17  that the Court must conclude and does that there is no basis

18  for the Court to find anything -- based on the no notice

19  argument by the defendant, Ms. Smith, to find anything other

20  than that the state court's judgment of September 26, 2011,

21  is not only a final judgment but a valid judgment not subject

22  to collateral attack based on any evidence presented in the

23  summary judgment proceedings here and that the fourth element

24  of collateral estoppel under Michigan law that Ms. Smith has

25  had a -- did have a full and fair opportunity to litigate the

1  issues in the state court case before the final judgment was

2  entered on September 26, 2011.

3      Now, as I noted, that judgment was in some respects

4  a default judgment and explicitly said so, but I would

5  note -- and nobody has argued otherwise in this adversary

6  proceeding -- in these summary judgment motions -- I would

7  note that the federal courts uniformly have held that under

8  Michigan law a default judgment is entitled to preclusive

9  effect under the doctrine of collateral estoppel -- or it's

10 entitled to such treatment and effect even though it was

11 entered as a default judgment where there has been

12 substantial participation in the litigation up to that time

13 by the party to be precluded, and that was -- that's

14 certainly the case here.  And, in fact, as I held in the

15 Pixley case, 456 Bankruptcy Reporter at 776-78, my view is

16 that Michigan law makes eligible for preclusive effect under

17 collateral estoppel even so-called true default judgments;

18 that is, default judgments entered after a defendant fails to

19 respond to a summons and complaint filed against them and

20 does not participate at all in defending or litigating in the

21 action.  In support of that proposition, I would rely on not

22 only my decision in the Pixley case which I have already

23 cited but also a recent -- fairly recent decision and opinion

24 by Judge Shapero of our Bankruptcy Court in the case of

25 Comerica Bank versus Patricia Kory, K-o-r-y.  I don't know if

1   that opinion is published yet or will be, but it is -- it can

2   be found on our court's website in the PACER system under

3   that adversary proceeding case number at Docket Number 63.

4   It's entitled "Opinion Denying Defendant's Motion for

5   Reconsideration." It was filed March the 28th -- or March

6   28, 2013, and I rely on that opinion and the reasoning and

7   holding of Judge Shapero in that opinion as well here.

8           For all of those reasons then, the defendant's no

9   notice argument -- or notice argument that I have described

10  and I've been discussing is not a valid basis for the Court

11  to deny summary judgment in favor of the plaintiff or to

12  grant summary judgment in favor of the defendant, and the

13  argument must be rejected based on the record before me as a

14  matter of law. Now, that does not, however, preclude the

15  defendant, Ms. Smith, from trying to get the Circuit Court

16  that entered the final judgment or any other appropriate

17  court in the state court system to grant her relief from the

18  September 26, 2011, judgment on the basis of -- on any basis

19  on which she can persuade the Court to do so, including any

20  argument based on not getting sufficient notice of the trial

21  date or the scheduling order or anything else, so this

22  opinion and my ruling on the summary judgment motion is

23  without prejudice to that effort, any effort on the

24  defendant's part to that effect, but there's been no evidence

25  that any effort like that has occurred yet.

1    In any case, I want to turn now to talk about the

2    requirements for collateral estoppel to have preclusive

3    effect or give preclusive effect to the September 26, 2011,

4    judgment as the plaintiff -- in the way that the plaintiff is

5    asking the Court to do, and those elements are that --

6    essentially are that the -- with respect to the money

7    judgment that the credit union obtained in the final judgment

8    of the state court September 26, 2011, that the -- all the

9    necessary elements for a nondischargeability determination

10   under Section 523(a)(6)'s willful and malicious injury

11   provisions were actually litigated and necessarily

12   determined, necessarily decided in the state court action and

13   final judgment.

14        Now, the first thing I want to talk about in that

15   regard is to discuss briefly the elements that the plaintiff

16   credit union must establish of nondischargeability under

17   Section 523(a)(6).  As I mentioned earlier, Section 523(a)(6)

18   makes nondischargeable any debt, quote, "for willful and

19   malicious injury by the debtor to another entity or to the

20   property of another entity," unquote.  In the _Pixley_ opinion

21   itself, I discussed what the elements are for

22   nondischargeability under Section 523(a)(6), and what I said

23   there still holds true under the law.  _Pixley_ was decided

24   long after the U.S. Supreme Court's decision in the _Geiger_

25   case, which the parties have discussed at length, and relied

1  principally on the Markowitz versus Campbell case, a 1999
2  Sixth Circuit case which said and held what Geiger means, the
3  Supreme Court's decision in Geiger means, with respect to
4  what is a willful injury under Section 523(a)(6), and so what
5  I said in Pixley is still good law, and I incorporate it by
6  reference.  It appears at 456 Bankruptcy Reporter at page
7  785.  And essentially what I said there is -- and it is the
8  case that in order to establish nondischargeability under
9  Section 523(a)(6), the creditor must show an injury to person
10 or property by the debtor that is both willful and malicious.
11 To find a willful injury under Section 523(a)(6), the Court
12 must determine either that, one, the actor desired to cause
13 the consequences of the act or, two, the actor believed that
14 the given consequences of his or her act were substantially
15 certain to result from the act.  And I'm omitting citations
16 here, but one of them includes the Markowitz case I've
17 indicated, which is 190 Federal Reporter 3d 455 at page 464,
18 Sixth Circuit decision from 1999.  In addition to the cases
19 that I cite in the Pixley case, I would add the additional
20 citation for this proposition regarding what willful injury
21 means.  The Sixth Circuit's decision in the Kennedy versus
22 Mustaine, M-u-s-t-a-i-n-e, case, which we discussed at oral
23 argument yesterday and which is cited in the -- in one of the
24 briefs filed by the plaintiff credit union on summary
25 judgment here, that's reported at 249 Federal Reporter 3d 576

1   at page 580, a Sixth Circuit decision from 2001, which quotes

2   and cites the Sixth Circuit's earlier decision from

3   <u>Markowitz</u>.  As I said in <u>Pixley</u> regarding the malicious

4   concept at 523(a)(6), quote, "Under Section 523(a)(6),

5   'malicious' means in conscious disregard of one's duties or

6   without just cause or excuse.  It does not require ill-will

7   or specific intent," unquote.  And in <u>Pixley</u> I cited with --

8   for that proposition, among other things, the <u>Wheeler</u> versus

9   <u>Lawdany</u> case, which is cited and discussed at some length in

10   the defendant -- or defendant's summary judgment briefs in

11   this case.  That's 783 Federal Reporter 2d 610 at 615, a

12   Sixth Circuit decision from 1986.  While <u>Wheeler</u> versus

13   <u>Lawdany</u> was overruled with respect to its discussion of

14   willfulness and willful injury because of the later <u>Geiger</u>

15   decision of the Supreme Court, what it says about what's

16   malicious mean under 523(a)(6) remains good law, in my view.

17       So malicious there under 523(a)(6) has a rather

18   unique special meaning, which is not necessarily what the

19   layperson might think or assume when they see the word

20   "malicious."  It does not require ill-will or specific intent

21   to injure.  To the extent ill-will or specific intent is at

22   all relevant, that's covered under willfulness.  Malicious

23   includes and can be satisfied merely by showing that the

24   defendant debtor acted without just cause or excuse in the

25   conduct which formed the basis for the debt at issue.

1    The next thing I want to talk about is what the
2  elements of defamation, libel, and slander are under Michigan
3  law.  As the final judgment of September 26, 2011, by the
4  state court explicitly says and as is clear from the findings
5  of fact and conclusions of law of the state court the same
6  day, judgment was entered on all three counts of the credit
7  union's complaint in that case, and those counts, as
8  described by the state court, were, Count I, slander per se;
9  Count II, libel per se; Count III, defamation per se.  That's
10  from paragraph 1 of the final judgment, which is at Docket
11  85, as I said earlier.
12    The Michigan Court of Appeals has held that the
13  elements of defamation in a cause of action for defamation
14  under Michigan law are the following, and this applies
15  whether it's libel, slander, or both in the same conduct or
16  similarly related conduct.  It says, "The elements of a cause
17  of action for defamation are (1) a false and defamatory
18  statement concerning the plaintiff, (2) an unprivileged
19  publication to a third party, (3) fault amounting to -- at
20  least to negligence on the part of the publisher, and (4)
21  either actionability of the statement irrespective of special
22  harm, parentheses, defamation per se, close parentheses, or
23  the existence of special harm caused by the publication,
24  paren, defamation per quod," unquote -- close paren, unquote.
25  Now, that is from the Michigan Court of Appeals case in the

1  <u>Burden</u> versus <u>Elias Brothers Big Boy Restaurants</u> case, which

2  is cited in the summary judgment briefs, 240 Michigan

3  Appellate 723, 613 N.W. 2d 378 at page 381, a Court of

4  Appeals decision in Michigan from 2000.

5          As the <u>Burden</u> case indicate -- holds and makes

6  clear, defamation per se, libel per se, slander per se, any

7  of those things, includes situations where the statements

8  that form the basis for the defamation claim made by the

9  defendant include charging the plaintiff with commission of a

10  crime.  The <u>Burden</u> case held that at 613 N.W. 2d at pages

11  381 -- 381 and said that, quote, "At common law, words

12  charging the commission of a crime are defamatory per se, and

13  hence, injury to the reputation of the person defamed is

14  presumed to the extent that the failure to prove damages is

15  not a ground for dismissal," unquote.  This concept of

16  defamation per se is also recognized in the Michigan statute,

17  Michigan Compiled Laws, Section 600.2911, sub (1), which the

18  parties have discussed in their briefs and in oral argument,

19  and that -- while that statute is worded in a way that it

20  says that, "Words imputing a lack of chastity to any female

21  or male are actionable in themselves and subject the person

22  who uttered or published them to a civil action for slander

23  in the same manner as the uttering or publishing of words

24  imputing the commission of a criminal offense," unquote.  The

25  reason that's worded that way is because it had already been

1  long-established in common law of Michigan that the words

2  imputing the commission of a criminal offense are defamatory

3  per se, assuming they're false, and the other elements of

4  defamation are met, but it is per se defamatory, that type of

5  statement, and so that statute made clear that words imputing

6  a lack of chastity were to be given the same per se

7  defamation treatment.

8          In the Burden case, the Michigan Court of Appeals

9  recognized at page 382 of the Court's opinion that this

10  statute that I just read from does make clear and confirm

11  that words charging the commission of a crime are defamatory

12  per se.  At page 382 of its opinion, the Burden court said

13  that this statute, quote, "is the codification of the common-

14  law principle that words imputing a lack of chastity or the

15  commission of a crime constitute defamation per se and are

16  actionable even in the absence of an ability to prove actual

17  or special damages, as evidenced by the statute's indication

18  that such words are 'actionable in themselves,'" period,

19  unquote.  This concept as well is also established and held

20  and recognized by the U.S. Court of Appeals for the Sixth

21  Circuit in the Kennedy versus Mustaine case, which I already

22  cited earlier, at 249 Federal Reporter 3d at page 582.  Under

23  Michigan law, in cases involving defamation per se, such as

24  where there was a statement imputing the commission of a

25  crime to a -- someone, cases involving defamation per se,

1   injury to the reputation of the person defamed is presumed.

2   I already read from the <u>Burden</u> case where the Michigan Court

3   of Appeals held that and recognized that.  In addition to

4   what I read from earlier from page 381 on that subject from

5   the <u>Burden</u> case, I would also want to read the following from

6   <u>Burden</u>, which is at pages 381 to 382, quote, "Where

7   defamation per se has occurred, the person defamed is

8   entitled to recover general damages in at least a nominal

9   amount," and that's because the Court has just said that with

10  defamation per se, injury to the reputation of the person

11  defamed is presumed from the statement.

12        I want to talk next briefly hopefully about the

13  concept of malice under Michigan law of defamation and what

14  malice -- how malice is relevant to a defamation, including

15  libel and slander, claim under Michigan defamation law.  The

16  concept of malice has a different meaning under Michigan law

17  regarding defamation than it has under the special definition

18  of malice or malicious given by federal courts to that word

19  as used in Section 523(a)(6) of the Bankruptcy Code.  Malice

20  arises in at least two contexts under Michigan defamation

21  law.  The first of these contexts is that if the person

22  claiming defamation is a public figure or a public official,

23  the plaintiff claiming defamation in that case must prove and

24  establish as part of his or her case that the defendant acted

25  with actual malice.  That is one of the holdings of the

1    Wheeler versus Laudani case, the Sixth Circuit case that I
2    cited earlier, and that's at 783 Federal Reporter 2d at page
3    615, and there the Sixth Circuit cites a number of Michigan
4    cases for that proposition.  The Wheeler case goes on to say
5    that Michigan courts follow the definition of actual malice
6    set forth in the Supreme Court's decision in New York Times
7    versus Sullivan, which is quoted as saying, quote, "knowledge
8    that the statement was false or with reckless disregard of
9    whether it was false or not," unquote.  This concept and this
10   notion is now codified under Michigan law in Michigan
11   Compiled Laws, Section 600.2911, sub (6), which says that,
12   quote, "An action for libel or slander shall not be brought
13   based on a communication involving public officials or public
14   figures unless the claim is sustained by clear and convincing
15   proof that the defamatory falsehood was published with
16   knowledge that it was false or with reckless disregard of
17   whether or not it was false," unquote.
18        The second context in which malice comes up under
19   Michigan law of defamation is described and discussed in the
20   Burden case, the Michigan Court of Appeals case, 613
21   Northwestern Reporter 2d at pages 381 to 82, where the Court
22   there indicates that in cases of defamation per se, there is
23   a distinction between nominal damages and what the Court
24   calls substantial damages.  An award of at least nominal
25   damages or damages in a nominal amount, as the Court puts it,

1    is something that the plaintiff in a per se defamation case

2    is entitled to even without proving any actual damages

3    because -- and that's, again, because of the presumption

4    Michigan law applies that a person -- the person defamed in a

5    case of defamation per se is presumed to have suffered injury

6    to their reputation as a result, but then the Court says in

7    Burden that, quote, "Where the defamatory publication is

8    'maliciously published,' the person defamed may recover

9    'substantial damages' even where no special damages could be

10   shown," and so maliciously published, that concept comes up

11   in that context.

12        Now I want to talk -- having talked about the

13   elements of nondischargeability under Section 523(a)(6) and

14   the elements and concepts regarding defamation claims under

15   Michigan law, of course, the Court needs to, in effect, put

16   these together with and compare them to the findings of fact

17   and conclusions of law in the judgment and what was actually

18   litigated and necessarily determined in the state court's

19   final judgment at issue in this case of September 26, 2011,

20   and so I want to talk about that next.

21        The state court in its findings of fact and

22   conclusions of law of September 26, 2011 -- again, this is at

23   Docket 85, one of the exhibits -- at pages 4 to 5 said that

24   it was -- that it found all of the well-pled allegations of

25   the plaintiff credit union's complaint true and then said the

 1   following, quote, "These facts include but are not limited to

 2   Defendant Smith," and it's quoting from the complaint

 3   repeatedly here, but -- "Defendant Smith alleged that the

 4   credit union had taken or otherwise misappropriated funds

 5   from her credit union account.  On or about February 16,

 6   2007, defendants appeared at the main branch of the Michigan

 7   First Credit Union with picket signs and began passing out

 8   documents to members entering the credit union which alluded

 9   to the credit union having stole $40,000 from Defendant Smith

10   by virtue of double bookkeeping; that on March 23, 2007, the

11   defendants appeared at Michigan First Credit Union and again

12   held up signs and disseminated information to credit union

13   members that stated that the credit union stole $40,000; that

14   defendants made an unprivileged publication of false,

15   malicious, and defamatory information about the business

16   practices of plaintiff by virtue of claiming that the

17   plaintiff stole $40,000 from Defendant Smith; that defendants

18   have falsely and maliciously alleged that the credit union

19   has committed a crime against them; that the defendants'

20   broadcasting of such false and malicious allegations are

21   injurious to the credit union's business; that defendants'

22   statements have harmed the reputation of the credit union and

23   the public by lowering the estimation of the credit union in

24   the general public; that defendants disseminated false and

25   malicious information to third parties regarding the credit

1   union, which casts an aspersion upon the credit union

2   honesty, method of doing business, and the general business

3   character; that defendants' false and malicious statements

4   harmed both the credit union's business reputation and its

5   ability to do business; that defendants' statements that the

6   credit union stole $40,000 from -- $40,000 from Defendant

7   Smith's account are false and defamatory; that defendants

8   have published and disseminated the information to third

9   parties during the course of their protests at the credit

10  union; that the defendants' statements demonstrate a reckless

11  and/or negligent disregard for the truth; that defendants'

12  statements were false and malicious, cast an aspersion upon

13  the credit union's honesty, its methods of doing business,

14  and its general business character; and that the defendants'

15  statements harmed the credit union's business reputation and

16  its ability to do business," unquote.

17         Now, obviously in that quotation -- obviously in

18  quoting from the complaint and making -- finding those

19  findings, the state court obviously repeated itself a number

20  of times, but I wanted to read that whole passage as part of

21  this bench opinion to get the full flavor of the findings

22  that the state court made.

23         Based on its findings and conclusions, which are

24  fully contained in the 15-page findings of fact and

25  conclusions of law document that I just read parts of, the

1     state court entered a judgment against the defendants, Ms.

2     Smith and her daughter, Ms. Troupe, for damages consisting of

3     what the Court called actual damages of $4,733 and which that

4     Court said was being awarded under two statutory sections of

5     the Michigan Compiled Laws, Section 600.2911, that being

6     600.2911, sub (2)(a), and 600.2911, sub (7). The former of

7     those sections, 600.2911, sub (2)(a), says, quoting with

8     exception not applicable here, "In actions based on libel or

9     slander the plaintiff is entitled to recover only for the

10     actual damages which he or she has suffered in respect to his

11     or her property, business, trade, profession, occupation, or

12     feelings," unquote, but then 600.2911, sub (7), says, and

13     which the trial court -- state court applied as well, quote,

14     "An action for libel or slander shall not be brought based

15     upon a communication involving a private individual unless

16     the defamatory falsehood concerns the private individual and

17     was published negligently. Recovery under this provision

18     shall be limited to economic damages including attorney

19     fees," unquote. Based upon that latter section as well, the

20     state court in the final judgment included as its -- part of

21     its award of damages against the defendants attorney fees

22     incurred by the credit union as a result of the defamation

23     that the Court had found in the amount -- total amount for

24     two attorneys of $56,185.66. The total amount of the damages

25     then was -- stated in the final judgment was $60,918.66.

1   Now, in the final judgment then, the state court went on to

2   apportion fault equally between the two defendants and then

3   award damages -- basically split the total damages so that

4   half of the total damages amount was awarded against each

5   defendant, so the damages amount awarded against -- in favor

6   of the credit union against Ms. Smith was 30,459.33,

7   including the, quote, "actual damages," unquote, and the

8   attorney fees component of damages, and then, in addition,

9   the judgment says in paragraph 3, "Michigan First is awarded

10  pre-judgment interest and post-judgment interest on that

11  award at the applicable legal rate," so that was the monetary

12  relief ordered by the -- awarded by the state court in the

13  final judgment against the defendant in this adversary

14  proceeding, Ms. Smith.

15        For reasons I'm about to explain -- and although

16  this doesn't end the matter because there is another issue to

17  talk about after this, but for reasons that I'm going to

18  explain now, the Court concludes that the necessary elements

19  of nondischargeability under Section 523(a)(6) were actually

20  litigated and necessarily determined in the state court's

21  findings of fact and conclusions of law and judgment in favor

22  of the credit union and against the defendant-debtor, Ms.

23  Smith.

24        First, with respect to the willfulness element under

25  Section 523's willful and malicious injury language, under

1  the Sixth Circuit's -- U.S. Court of Appeals for the Sixth

2  Circuit's holding and reasoning in the Kennedy versus

3  Mustaine case, which I've cited earlier, the Court must

4  conclude that the element of willfulness under 523(a)(6) was

5  established by and, therefore, Ms. Smith is precluded from

6  contesting now under collateral estoppel concepts by the

7  state court's final judgment.  The Kennedy versus Mustaine

8  case, in my view, which was from 2001, is not distinguishable

9  from this case in any material or meaningful way.  At

10  pages -- at 249 Federal Reporter 3d at pages 582 to 83, the

11  Sixth Circuit in that Kennedy versus Mustaine case said the

12  following.  First, the Court said, quote, "Michigan law

13  standing alone provides the basis for preclusion.  Under

14  Michigan law, words as to the lack of chastity are defamation

15  per se -- i.e., injurious by their nature."  Then a little

16  bit later the Court says, quote, "Debtors were estopped from

17  litigating whether these defamatory statements were

18  intentional and substantially certain to cause harm for

19  purposes of Section 523(a)(6)."  And then later the Sixth

20  Circuit says the following, quote, "The Michigan judgment in

21  and of itself precludes litigation of this issue because the

22  statements at issue are defamation per se under Michigan law,

23  meaning that the courts presume that the speakers make such

24  statements knowing that substantial harm or injury will

25  result," unquote, and the Court cited the Markowitz case,

```
1    which is the standard in the Sixth Circuit for willfulness
2    after Geiger.
```

3         Whether or not one might, as an original matter,
4    agree with this reasoning of the Sixth Circuit, which is
5    interpreting Michigan law, this Court, in my view, is bound
6    by it and has to follow it and apply it in this case, and the
7    same reasoning applies here. Here the defamation -- it was
8    defamation per se that was the basis for the money judgment
9    at issue in the state court here. Defamation per se was
10   alleged in the credit union's complaint in the state court.
11   It was found to have occurred in the findings of fact and
12   conclusions of law of the state court, and judgment was
13   entered on the three counts of the plaintiff's complaint, all
14   of which were one form of defamation, libel, or slander per
15   se, all based on the same conduct by the defendants.

16        Now, while the defamation per se in the Kennedy
17   versus Mustaine case had to do with words regarding a lack of
18   the plaintiff's chastity, the defamation per se in this
19   court -- case, of course, is -- in our case is that the words
20   imputing the commission of a crime to the defendant -- or to
21   the credit union by the defendant, Ms. Smith, and so this was
22   defamation per se, just as the defamation in the Kennedy
23   versus Mustaine case was defamation per se under Michigan
24   law. I disagree with defense counsel's arguments, including
25   made yesterday in the oral argument, that Kennedy versus

1    <u>Mustaine</u> is somehow -- applies Kentucky law or a mixture of

2    Michigan and Kentucky law.  I disagree.  It does not.  In the

3    respects in which I'm discussing, it is applying only

4    Michigan law and Michigan law of defamation per se, and it is

5    applicable in this case to the same extent that it applied in

6    <u>Kennedy</u> versus <u>Mustaine</u>.

7         The idea is simply that it is enough to show

8    willfulness under Section 523(a)(6) when there's a judgment

9    under Michigan law for defamation per se, such as we have

10   here, simply that it is defamation per se and where in that

11   case the Sixth Circuit has clearly held that for purposes of

12   Section 523(a)(6), the judgment under Michigan law for

13   defamation per se definitively establishes for collateral

14   estoppel preclusion purposes that the willfulness element

15   under Section 523(a)(6) is met because necessarily the

16   defendant debtor who is guilty of the defamation per se is

17   presumed to have made the statements they made knowing that

18   substantial harm or injury would result from those

19   statements, and that's all that's needed under <u>Kennedy</u> versus

20   <u>Mustaine</u> to establish willfulness, and that is clearly

21   present in this case for reasons I've already discussed.

22        Now, I do want to talk about this <u>Wheeler</u> versus

23   <u>Laudani</u> case a little bit.  That case is cited and relied on

24   heavily by the defendant in her summary judgment arguments,

25   and that case is a Sixth Circuit case also.  It was decided

1   long before <u>Kennedy</u> versus <u>Mustaine</u>.  It was decided in 1986

2   before the Supreme Court's decision in the <u>Geiger</u> case

3   changed the law regarding willfulness, but the Sixth Circuit

4   in that case, which also involved a Michigan defamation

5   judgment, a defamation judgment under Michigan law and

6   whether it was dischargeable or not -- the Sixth Circuit in

7   that case said at 783 Federal Reporter 2d 610 at page 615

8   that, quote, "The intentional tort of libel meets the

9   requirements of Section 523(a)(6) for non-dischargeability

10  when the debtor/author knows the published statements were

11  false.  Mere reckless disregard for the truth or falsity of

12  the statement, which can support a libel verdict, is not a

13  willful and malicious injury for purposes of Section

14  523(a)(6)," unquote.  That certainly without more and just

15  alone -- standing alone on its face would appear to support

16  the defendant's argument that unless it can be shown that the

17  state court made a finding or that its judgment necessarily

18  determined -- included a finding or determination that the

19  defendant, Ms. Smith, knew -- actually knew that her

20  statements were false when she made them that she cannot be

21  found, based on the state court judgment, to be guilty of a

22  willful injury to the credit union within the meaning of

23  Section 523(a)(6).  However, the <u>Kennedy</u> versus <u>Mustaine</u>

24  case, which came in 2001, many years later after <u>Wheeler</u>

25  versus <u>Laudani</u>, and after the Supreme Court's decision in the

1   <u>Geiger</u> case, explicitly recognized and noted that the Supreme

2   Court's decision in the <u>Geiger</u> case overruled <u>Wheeler</u> versus

3   <u>Laudani</u> and other earlier cases decided by the Sixth Circuit

4   with respect to the willfulness prong of Section 523(a)(6).

5   That's stated by the <u>Kennedy</u> versus <u>Mustaine</u> court at 249

6   Federal Reporter 3d at page 580.

7        A second problem with the defendant's reliance on

8   <u>Wheeler</u> versus <u>Laudani</u> is that it involved a defamation case

9   brought by a public figure under Michigan law.  It was an

10  elected official.  And as I indicated earlier, <u>Wheeler</u> versus

11  <u>Laudani</u> recognized that under Michigan law when a public

12  figure or elected official -- such as an elected official

13  brings a defamation action, they must prove actual malice.

14  That's <u>Laudani</u>, 783 Federal Reporter 2d at 615.  This case,

15  of course, does not involve an action by a public official

16  the way <u>Laudani</u> did.

17       A third distinction and point to note about the

18  <u>Laudani</u> case is that there is no indication that I can find

19  in the <u>Wheeler</u> versus <u>Laudani</u> case that the defamation at

20  issue in that case was per se defamation, defamation per se

21  under Michigan law, as it was in the <u>Kennedy</u> case, <u>Kennedy</u>

22  versus <u>Mustaine</u> case, and as it is in this case.

23       But, finally, regarding <u>Wheeler</u> versus <u>Laudani</u>, to

24  the extent that case is inconsistent with what the Sixth

25  Circuit later held in 2001 in <u>Kennedy</u> versus <u>Mustaine</u>

1   regarding willfulness and how it applies in defamation per se

2   cases under Michigan law, the later decided case, <u>Kennedy</u>

3   versus <u>Mustaine</u>, as more recent precedent by the Sixth

4   Circuit, controls and, as a decision of the U.S. Court of

5   Appeals for the Sixth Circuit, is directly binding on this

6   Court, and so I must follow it, and I do.  And based on that

7   and for the reasons I've already explained, then it is clear

8   that the state court final judgment involved both actual

9   litigation of and a necessary determination that the

10  defendant, Ms. Smith -- that the injury she caused the credit

11  union was a willful injury to the credit union within the

12  meaning of Section 523(a)(6).

13          I want to talk next about the other prong or

14  requirement under 523(a)(6), and that's the malicious prong;

15  that is, the injury must be both willful and malicious.  And

16  the malicious requirement, in my view, is also clearly met

17  here.  Again, as I noted in the <u>Pixley</u> opinion, 456

18  Bankruptcy Reporter at 785, malicious can be demonstrated

19  merely by showing that the action of the defendant-debtor

20  was, quote, "without just cause or excuse," unquote.  Here

21  the state court clearly found and necessarily determined that

22  the defendant, Ms. Smith's, actions that the Court found to

23  be defamation per se were without just cause or excuse.  And

24  in order to make that finding, the state court did not have

25  to make a finding that the defendant, Ms. Smith, actually

1   knew that her statements against the credit union were false

2   when she made them.  For this element, maliciousness, under

3   523(a)(6) to be met, it is enough for the state court to have

4   found, as it did, that -- at page 4 of the findings of fact

5   that the defendant, Ms. Smith, made -- her publication of the

6   false and defamatory statements were -- was unprivileged, as

7   the Court put it -- that's page 4 of the findings of fact of

8   the state court -- and that the actions of Ms. Smith in

9   making the statements that were defamatory were sufficient to

10   make her liable for defamation because, at a minimum, she is

11   found to have been guilty of fault amounting to at least

12   negligence on her part in publishing the statements.  That's

13   one of the elements of defamation under the Burden versus

14   Elias Brothers case that I quoted from earlier.  And, in

15   fact, as we discussed at some length during yesterday's

16   hearing, the state court in its findings of fact expressly

17   found that Ms. Smith's and her daughter's statements against

18   the credit union, quote, "demonstrate a reckless and/or

19   negligent disregard for the truth," unquote.  Based on those

20   findings, it is clear that the state court found and

21   necessarily determined that Ms. Smith's conduct that caused

22   the injury from the defamation per se to the credit union,

23   which is the basis of the state court judgment against her,

24   was conduct that was without just cause or excuse and,

25   therefore, malicious as that term "malicious" is defined

1    under Section 523(a)(6) of the Bankruptcy Code.

2           For all these reasons, the defendant, Ms. Smith, is

3    collaterally estopped and precluded from contesting that her

4    debt to the credit union under the money judgment portion of

5    the state court judgment of September 26, 2011, is

6    nondischargeable under Section 523(a)(6), and the Court must

7    find that that debt is nondischargeable under Section

8    523(a)(6).

9           Now, there is an issue -- a final issue that the

10   defendant raised that I want to discuss that has to do with

11   the amount of the damages and the components of the damages

12   that the final judgment of the state court awarded.  The

13   defendant argues -- has argued that the -- that at least with

14   respect to the attorney fee component of the damages awarded

15   by the state court, which, of course, is the lion's share of

16   the total amount of damages awarded against the defendant,

17   Ms. Smith, and her daughter by that judgment, that that

18   portion of the money judgment is -- cannot be viewed as

19   nondischargeable under Section 523(a)(6) even if the other

20   part, the actual damages part, can be held to be

21   nondischargeable because the credit union's incurring of

22   attorney fees in this $56,000-plus amount that's included in

23   the money judgment damages amount was not something that the

24   Court can find that the defendant, Ms. Smith, knew was harm

25   that would be suffered by the credit union or that she

1 believed that such harm, incurring of such attorney fees in

2 such an amount, were substantially certain to result from her

3 action in making the defamatory statements within the -- this

4 concept as used in defining what a willful injury is under

5 Section 523(a)(6). Based on that, the defendant argues that

6 that larger attorney fee portion of the money judgment --

7 money damages judgment must be -- the Court must conclude

8 that that is dischargeable even if the other damages -- much

9 smaller damages part of the judgment is not under Section

10 523(a)(6).

11      The defendant cites no legal authority whatsoever to

12 support this argument, and the Court concludes that this

13 argument is based on a reading of Section 523(a)(6) that is

14 too narrow. Rather, the Court concludes that the Court must

15 reject this argument by the defendant based upon the holding

16 and reasoning of the U.S. Supreme Court in another case, the

17 case of <u>Cohen</u>, C-o-h-e-n, versus <u>de la Cruz</u>, d-e l-a C-r-u-z,

18 a U.S. Supreme Court decision from 1998 reported at 523 U.S.

19 Reporter 213, 118 Supreme Court Reporter 1212. In the <u>de la</u>

20 <u>Cruz</u> case, the Supreme Court was concerned with a case in

21 which a bankruptcy debtor in a Chapter 7 case had been

22 determined to have a nondischargeable debt to a creditor for

23 fraud based on Section 523(a)(2)'s exception to discharge for

24 a debt for fraud. While it was not a Section 523(a)(6)

25 willful and malicious injury case then, it, as I'll describe,

1  is functionally similar and equivalent to what we have in

2  523(a)(6) for purposes of this issue.  The Supreme Court held

3  that the discharge for actual fraud -- the exception to

4  discharge for actual fraud under Section 523(a)(2) prevented

5  the discharge of all liability arising from the debtor's

6  fraud, including not only actual damage -- compensatory

7  damages that the creditor suffered and was -- and obtained in

8  a judgment but also treble damages and attorney fees and

9  costs that were part of the judgment for fraud.  The Supreme

10  Court's reasoning was that when Section 523(a) -- its opening

11  words refer to and say that this title does not discharge an

12  individual debtor from any debt and then has the various --

13  after that has the various subprovisions -- subsections,

14  including 523(a)(2) and 523(a)(6), that when -- in that

15  language and in those provisions, the phrase "a debt for,"

16  which is the last word of the opening part of 523(a), and the

17  word "for" is the first word in 523(a)(2), that subsection,

18  that the words "debt for" means debt arising from or debt on

19  account of.  Of course, the same reasoning would apply to

20  523(a)(6) because that also uses the words "any debt," and

21  then the first words -- first word in 523(a)(6) is "for,"

22  "debt for willful and malicious injury," et cetera.  Anyway,

23  in de la Cruz, the Supreme Court went on to say that Section

24  523(a)(2)(A) is best read to prohibit the discharge of any

25  liability arising from a debtor's fraudulent acquisition of

1   money, property, et cetera, including an award of treble

2   damages for the fraud.  I think the Supreme Court went on to

3   reiterate that the conclusion -- its conclusion that Section

4   523(a)(2)(A) bars the discharge of all liability arising from

5   fraud, and that's -- those holdings are stated at Supreme

6   Court -- in the Supreme Court's opinion at 523 U.S. at pages

7   220 to 221 and 523 U.S. at page 222.

8           De la Cruz and its reasoning and holding, in my

9   view, apply with equal force to Section 523(a)(6) and debts

10  covered by that or that exception to discharge, and as a

11  result, the exception to discharge under Section 523(a)(6) in

12  this case and generally for willful and malicious -- a debt

13  for willful and malicious injury to another applies to all

14  debt, all liability rising from a willful and malicious

15  injury that a debtor makes -- causes to another and,

16  therefore, would include not only actual damages, as that

17  concept is used -- wording is used in the state court's final

18  judgment in this case, but also attorney fees, which MCL --

19  Michigan Compiled Laws 600.2911, sub (7), includes as part of

20  economic damages, as well as the pre-judgment and post-

21  judgment interest that the state court's final judgment in

22  this case awarded.  And so I must reject this argument by the

23  defendant based on the de la Cruz case as -- and give this

24  provision the reading that de la Cruz gave to Section

25  523(a)(2).

1    For all the reasons that I have described then in

2  this bench opinion -- and I'm sorry the bench opinion was

3  rather lengthy -- the Court will grant summary judgment for

4  the plaintiff, their motion for summary judgment, deny the

5  defendant's motion for summary judgment, will enter judgment

6  of nondischargeability on both Counts I and II for the

7  reasons I have explained, and I will prepare and enter an

8  appropriate order and judgment reflecting this and get that

9  entered.

10    Now, that will conclude this adversary proceeding.

11  There is no further proceeding to be had for final pretrial

12  conference, trial, any hearing on any other motions.  That's

13  it.  The cases will be done when I enter this judgment, and

14  the adversary proceeding will, of course, subject to any

15  right of appeal.  Thank you all.

16    MR. THORNBLADH:  Thank you, your Honor.

17    THE CLERK:  All rise.  Court is adjourned.

18  (Proceedings concluded at 4:03 p.m.)

INDEX


<u>WITNESSES:</u>

    None

<u>EXHIBITS:</u>

    None


      I certify that the foregoing is a correct transcript from the sound recording of the proceedings in the above-entitled matter.


/s/ Lois Garrett             July 10, 2013
_____      _____
Lois Garrett